**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lucifer Valdez Luna, | No. CV-26-04288-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| MidFirst Bank, et al., | |
| Defendants. | |

Plaintiff Lucifer Valdez Luna filed a complaint and an application for leave to proceed in forma pauperis. (Doc. 2.) The application is granted, which requires the court determine whether the complaint states any claim for relief. 28 U.S.C. § 1915(e)(2)(B)(ii). It does not.

## BACKGROUND

Luna "suffers from Psychogenic Non-Epileptic Seizures" which may result in seizures due to "extreme or prolonged sun exposure." (Doc. 1 at 4-5.) On April 10, 2026, Luna was waiting near a bus stop when they[1] sought "medically necessary shade on a perimeter wall located directly adjacent" to the bus stop. (Doc. 1 at 5.) That wall appears to be on property owned by defendant MidFirst Bank. Luna sat on the wall, as they had previously done "routinely and without issue." (Doc. 1 at 5.) A security guard employed by defendant Allied Universal approached Luna and "attempted to explicitly order [Luna] off of the easement, directing [Luna] to specifically sit at the bus stop." (Doc. 1 at 5.) Luna

---

[1] The complaint uses "they" when referring to Luna and the court does the same.

stated they had used the location previously and the guard informed Luna they "could lean on the perimeter wall, but not sit." (Doc. 1 at 5.) Luna asked the guard for a "bank manager to explain the situation," but the guard went inside the bank. (Doc. 1 at 5.)

Once inside, the guard spoke on the phone and "then returned outside to again order [Luna] over to the bus stop." (Doc. 1 at 6.) The "guard threatened to call the police and have [Luna] arrested for trespassing." (Doc. 1 at 6.) Luna attempted to speak to the bank manager, but the guard blocked Luna from "directly communicating" with the manager. (Doc. 1 at 6.)

Later that day, Luna sent an email to MidFirst regarding the incident. A MidFirst employee responded with "a brief, non-committal response, and a vague promise to look into the matter." (Doc. 1 at 8.) Luna sent a follow-up email that included what Luna "requested for resolution." (Doc. 1 at 9.) An Allied Universal employee sent an email to Luna that same day, providing a "vague apology." (Doc. 1 at 9.) A MidFirst regional manager sent a response to Luna's follow-up email, stating the guard was not employed by MidFirst.

Luna alleges the guard's actions, as well as "the lack of active, prompt cooperation, and lack of acknowledgement of the severity of the incident" caused a breakthrough seizure. (Doc. 1 at 10.) The guard's actions and resulting seizure "forced a total halt of [Luna's] operational businesses" and interfered with Luna's ability to provide their "freelance pet-sitting services." (Doc. 1 at 11-12.) Luna sent written demands to MidFirst and Allied Universal seeking, among other forms of relief, a "base settlement of $46,160." (Doc. 1 at 12.) Luna did not receive a response from either entity.

Luna alleges four claims based on these facts. First, "negligence" based on both defendants "deploy[ing] hostile personnel to arbitrarily enforce an alleged, unverified policy related to a public easement." (Doc. 1 at 13-14.) Second, intentional infliction of emotional distress based on the guard's "extreme and outrageous conduct by accosting, harassing, and verbally intimidating a citizen on a public perimeter." (Doc. 1 at 14.) Third, "personal injury" based on defendants' refusal "to reach a satisfactory resolution" after the

incident at the bus stop. And fourth, "Title III Americans with Disabilities Act Violation" based on defendants "actively blocking access to life-preserving, medically necessary shade." (Doc. 1 at 15.)

**ANALYSIS**

When a plaintiff is proceeding in forma pauperis, the complaint may proceed only if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (simplified). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "It is not the job of the district courts to make sense of the pleading, to supply facts to support the claim, or to imagine the claims that might fit the facts." *Gibson v. City of Portland*, 165 F.4th 1265, 1289 (9th Cir. 2026).

**I.      Negligence**

Luna's first claim is for "negligence." The basis of this claim appears to be intentional, not negligent, actions. That is, Luna alleges defendants "deployed hostile personnel to arbitrarily enforce an alleged, unverified policy related to a public easement." (Doc. 1 at 13-14.) Arizona law provides "negligence and intent are mutually exclusive grounds for liability." *Ryan v. Napier*, 425 P.3d 230, 236 (Ariz. 2018). An intentional tort requires "the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Id.* at 235. For example, "if a defendant acts with the intent to cause a harmful or offensive touching (battery), that same act cannot constitute negligence." *Id.* at 236. Here, all of Luna's allegations involve intentional acts by MidFirst and Allied Universal employees. Because there are no allegations of negligence, this claim is dismissed with leave to amend.

## II.    Intentional Infliction of Emotional Distress

Luna's second claim is for intentional infliction of emotional distress. The standard for this claim is difficult to meet because it requires allegations of "extreme and outrageous conduct." *Christakis v. Deitsch*, 478 P.3d 241, 245 (Ariz. Ct. App. 2020). To qualify, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" such that it is "regarded as atrocious and utterly intolerable in a civilized community." *Id.* (simplified). The "conduct must completely violate human dignity and strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung. It does not include mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* (simplified).

Luna alleges a guard told them to stop sitting on a wall and threatened to call the police if Luna refused to relocate. (Doc. 1 at 14.) Luna later had contact with other MidFirst and Allied Universal employees, and those responses did not meet Luna's expectations. These actions are not close to establishing a viable claim for intentional infliction of emotional distress. This claim is dismissed with leave to amend.

## III.    Personal Injury

Luna's third claim is for "personal injury." (Doc. 1 at 15.) The court is unable to determine the legal basis for this claim. The complaint seems to base this claim on a seizure Luna experienced after they failed "to reach a satisfactory resolution following the April 10th incident." (Doc. 1 at 15.) In other words, Luna is asserting this "personal injury" claim based on defendants' failure to settle with them before this suit was filed. Luna has not provided any indication what legal theory might require defendants to have reached "a satisfactory resolution" based on Luna's demands. This claim is dismissed without leave to amend.

## IV.    Title III ADA

Luna's final claim is defendants violated the ADA by not allowing them to sit on the wall next to the bus stop. This claim suffers from three obvious flaws, one regarding standing and two regarding the merits.

First, "[p]rivate plaintiffs are limited to seeking injunctive relief under Title III of the ADA, so a plaintiff suing a place of public accommodation must show a sufficient likelihood of injury in the future to establish standing." *Langer v. Kiser*, 57 F.4th 1085, 1092 (9th Cir. 2023). This means previously "[e]ncountering ADA violations at a place of public accommodation . . . is not itself sufficient for standing." *Id.* To establish standing to proceed on this claim, Luna would need allegations that they intend to return to the bus stop, intend to seek shade again by sitting, and MidFirst's hired security will prohibit them from doing so. *Id.* at 1094. That sequence of events seems implausible, but its plausibility need not be assessed yet because Luna has not even alleged this sequence of events. The present allegations are not sufficient to establish Luna's standing.

The first merits-based flaw with Luna's ADA theory is that the wall next to the bus stop does not appear to be a place of public accommodation, nor does it appear to qualify as a "'facility' encompassed in the 'goods, services, facilities, privileges, advantages, or accommodations' offered by a place of public accommodation." *Langer v. Kiser*, 57 F.4th 1085, 1101 (9th Cir. 2023) (quoting 42 U.S.C. § 12182(a)). Places of public accommodation "are actual, physical places where goods or services are open to the public, and places where the public gets those goods or services." *Id.* at 1100 (simplified). The bank itself may be a place of public accommodation, but Luna has not alleged sufficient facts establishing a wall outside the bank should qualify as well. As for "facilities," they are "all or any portion of buildings, structures, sites, complexes, . . . roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located." *Id.* at 1101 (simplified). Again, the parking lot of the bank and surrounding sidewalk might qualify as "facilities," but Luna has not alleged sufficient facts that the perimeter wall should qualify as well.

The second merits-based flaw is, even assuming the wall might qualify as a facility under the ADA, Luna does not allege it was open for use by the general public. Excluding a disabled individual from a portion of a business "that is closed to the public" does not violate the ADA. *Id.* (simplified). Luna does not allege any facts that the wall was open to

use by the general public. In fact, Luna's complaint appears to allege the opposite as it alleges the interaction with the guard occurred before Luna was provided a "chance to disclose their disorder." (Doc. 1 at 6.) In other words, there are no allegations the guard was even aware Luna had a disability at the time Luna was told not to sit on the wall. The guard appears to have been enforcing a general prohibition on members of the public using that portion of the property. The ADA claim is dismissed with leave to amend.

### V.    Leave to Amend

Luna's complaint is dismissed but they are granted leave to amend all of their claims except for the "personal injury" claim, which is dismissed without leave to amend. If Luna chooses to amend, "the amended complaint may only allege other facts consistent with" the original complaint. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990) (simplified). Luna must file both the amended complaint and a version of the amended complaint that indicates how it differs from the original complaint.

**IT IS ORDERED** the Application (Doc. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** the complaint (Doc. 1) is **DISMISSED WITH LEAVE TO AMEND**. No later than **July 10, 2026**, plaintiff shall file an amended complaint. Plaintiff must also file a version of the amended complaint that indicates how it differs from the original complaint. The Clerk of Court is directed to enter a judgment of dismissal with prejudice if no amended complaint is filed by that date.

Dated this 29th day of June, 2026.

_____
**Honorable Krissa M. Lanham**
**United States District Judge**

- 6 -